| | |
|---|---|
| **DISTRICT COURT, LA PLATA COUNTY**<br>**STATE OF COLORADO**<br>1060 E. 2ND Ave,<br>Durango, CO 81301 | DATE FILED<br>July 4, 2026 7:16 PM<br>FILING ID: 955260B6692BB<br>CASE NUMBER: 2026CV30112 |
| **LUCINDA GARCIA, RQ (a minor),**<br>**ALASIAH MURRAY**<br>**and**<br>Plaintiffs,<br><br>**v.**<br><br>**SIXT RENT A CAR LLC, a Foreign Limited**<br>**Liability Company,**<br>Defendant | ▲  Court Use Only  ▲ |
| Attorney for Plaintiffs:<br>L. Paul LeRoux II #35987<br>LeRoux Law LLC<br>361 S. Camino Del Rio #328<br>Durango, CO 81303<br>Tel: 303-641-0109 | **Case Number: 26 CV** |
| Email: paul@lerouxlegal.com | Division:     Courtroom: |
| **COMPLAINT** | |

Plaintiffs Lucinda Garcia, RQ (a minor), and Alasiah Murray (referred to collectively as "Plaintiff" or individually where applicable), by and through their attorney, L. Paul LeRoux II of LeRoux Law LLC, submits the following Verified Complaint against Defendant Sixt Rent A Car, a Foreign Limited Liability Company, and alleges and avers as follows:

## I.       PARTIES AND VENUE

1.      Plaintiff Lucinda Garcia ("Plaintiff Garcia") is a Colorado resident.

2.      Plaintiff RQ ("Plaintiff RQ") is a Colorado resident.

3.      Plaintiff RQ is Plaintiff Garcia's minor child.

4.      Plaintiff Alasiah Murray ("Plaintiff Murray") is a Colorado resident.

5. Defendant Sixt Rent a Car LLC ("Defendant") is a Foreign Limited Liability Company with a principal office address listed as 1501 NW 49th St Ste 100, Fort Lauderdale, Florida 33309.

6. Defendant Sixt's Registered Agent is listed as Corporate Creations Network Inc. with an address of 201 E 4th St, Loveland, CO 80537-5601

7. To the best of Plaintiffs' knowledge none of the Parties are in the military.

8. Venue is proper in the District Court for La Plata County as Defendant Sixt is a nonresident company. Defendant does business throughout the state of Colorado, including La Plata County. Plaintiff are specifically designating La Plata County as the proper venue. Accordingly, Plaintiffs have complied with C.R.C.P. 98 with respect to designating La Plata County as the proper venue for this action.

## II.   EXCLUSION UNDER C.R.C.P. 16.

9. Plaintiffs state this action is no exempted from C.R.C.P. 16.1.  Plaintiffs and their counsel have explored the option and potential benefits of C.R.C.P. 16.1 and believe that application of the Rule to this action is not appropriate.  In accordance with C.R.C.P. 11, undersigned counsel has conducted a reasonable investigation into Plaintiffs' damages. Undersigned counsel has a good faith basis to assert Plaintiffs' damages may exceed the monetary limitations for actions under C.R.C.P. 16.1.  Therefore, C.R.C.P. 16.1 shall not govern this action.

## III.   GENERAL ALLEGATIONS

10. On June 28, 2024, Plaintiff Garcia and Defendant entered into a Rental Agreement ("Rental Agreement"). *See* attached Exhibit 1.

11. Plaintiff Garcia rented a 2022 Toyota Sequoia ("the Vehicle") from Defendant Sixt.

12. The rental period consisted of June 28, 2024, until August 7, 2024.

13. In accordance with the Rental Agreement Defendant Sixt represented:

a. The Vehicle may only be used in the Contiguous United States and the Canadian province of British Columbia (the "Region").

b. By signing below, you agree to the Terms and Conditions printed on the rental jacket and to the terms found on this Face Page, which together constitute this Agreement. You acknowledge that you have been given an opportunity to read this Agreement before being asked to sign it, and that all information you have provided is true and correct.

14. Pursuant to the Terms and Conditions:

a. This is  contract for rental of the Vehicle.

b. [Plaintiff Garcia] and [Defendant] each waive their right to a jury trial or to participate in a class action pursuant to the following terms. [Plaintiff Garcia] and [Defendant] agree to arbitrate any and all claims, controversies or disputes of any kind ("claims") against each other, including but not limited to claims arising out of or relating to this agreement, or our products and services, charges, advertisings, court or agency, shall have authority to resolve any and all disputes relating to the interpretation, applicability, enforceability or formation of this agreement, including or rental vehicles including without limitation claims based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions or any other source of law. The arbitrator, and not any federal, state or local but not limited to any claim that all or any part of this agreement is void or voidable.

    c. The parties also agree that claims involving a third party insurance company separately providing coverage to you**, personal injury claims**, or claims relating to the application of your financial responsibility relating to the use or operation of Vehicle, may be brought in a court with valid jurisdiction.

    d. This arbitration agreement is subject to the Federal Arbitration Act. The arbitrator **has no authority to join or consolidate claims, or adjudicate joined and consolidated claims.**[1]

*See* attached Exhibit 2 (emphasis added).

15. Plaintiffs RQ and Murray were neither Parties nor signatories to the Rental Agreement (Terms and Conditions).

16. Plaintiffs RQ and Murray are not subject to the aforementioned Arbitration and Dispute Resolution Clauses.

17. Plaintiff Garcia's personal injury claims are not subject to the aforementioned Arbitration and Dispute Resolution Clauses.

18. On July 4, 2024, at approximately 2307 hours, Officer Walter Greaves ("Officer Greaves") with the Stratford Police Department, was scanning vehicles with his AXON ALPR camera (Automatic License Plate Recognition). He was notified the Vehicle was stolen. *See* attached Exhibit 3.

19. Officer Greaves initiated a high risk, felony stop of Plaintiffs.

20. Plaintiffs were removed from the Vehicle at gunpoint.

---

[1] Should Defendants argue Plaintiff Garcia's claims are subject to Arbitration, even assuming *arguendo* some may be subject to Arbitration, her personal injury claims are not subject to Arbitration and the Arbitrator lacks the authority to join, consolidate, and adjudicate non-arbitration claims with arbitration claims. As such, all of Plaintiff Garcia's claims are properly adjudicated in this Court as her non-arbitration claims are barred from being joined, consolidated and adjudicated in an Arbitration. By filing the instant Complaint in the District Court Plaintiff Garcia has not consented to joining, consolidating, and adjudicating any claimed non-arbitration claims in an Arbitration.

21. Plaintiff Garcia was ordered to lay on the ground.

22. Plaintiff Garcia was humiliated.

23. Plaintiffs were terrified.

24. Plaintiffs had no idea why they were being treated like criminals.

25. Plaintiffs' other family members were also in the vehicle including young children.

26. Officer Greaves advised Plaintiffs the Vehicle was reported stolen by Defendants to the Denver Police Department.

27. The Vehicle was placed in the NCIC stolen vehicle database.

28. Officer Greaves contacted Denver Police Department Records Technician Divine Owada ("Ms. Owada").

29. Ms. Owada provided the requisite information confirming the Vehicle was reported as stolen.

30. Officer Greaves confirmed Defendant never informed the Denver Police Department that the Vehicle was not stolen.

31. At the time Defendant rented the Vehicle to Plaintiff Garcia, Defendant knew, or should have known, the Vehicle was listed in the NCIC stolen vehicle database.

32. Defendant knowingly rented a stolen vehicle to Plaintiff Garcia.

33. Defendant knowingly placed Plaintiffs in harms way by renting a stolen vehicle to Plaintiff Garcia.

34. Defendant knew, or should have known, of the dangers associated with renting a stolen vehicle to Plaintiff Garcia.

35. Immediately thereafter, and pursuant to the Rental Agreement (Terms and Conditions), Plaintiff Garcia contacted Defendant in an effort to resolve this matter.

36.    Plaintiff Garcia made good faith efforts to settle her claims with Defendant.

37.    Defendant refused to engage in negotiations to settle this matter.

38.    Defendant blamed the Denver Police Department for the error in removing the Vehicle from the NCIC stolen vehicle database.

39.    More than thirty (30) days has passed since Plaintiff Garcia attempted to resolve her dispute with Defendant.

40.    The felony traffic stop was traumatizing to Plaintiffs.

41.    Plaintiff Garcia suffered emotional harm as a result of being detained and ordered to the lay on the ground at gunpoint.

42.    Plaintiffs RQ and Murray suffered emotional harm as a result of being detained at gunpoint.

43.    Plaintiff RQ continues to experience severe trauma when she sees law enforcement or has interactions with law enforcement.

44.    Plaintiffs Garcia and Murray continue to experience severe trauma when they have interactions with law enforcement.

45.    The felony traffic stop was traumatizing to Plaintiffs' family.

## FIRST CLAIM FOR RELIEF
### (Colorado Consumer Protection Act)
### (All Plaintiffs)

46.    All paragraphs of this Complaint are incorporated into this First Claim for Relief as if fully written and set forth herein.

47.    Defendant knowingly made false representations as to the source, sponsorship, approval, title, or certification in connection with renting the Vehicle to Plaintiff Garcia; namely the Vehicle was not stolen.

48. Defendant knowingly made false representations as to affiliation, connection, or association with or certification by another, including but not limited to, attesting to the Vehicle being free and clear of any legal impediments when Plaintiff Garcia rented the Vehicle and took possession of the same.

49. Defendant used deceptive representations in connection with goods or services, namely the Vehicle was not stolen, and was free and clear of any legal impediments.

50. Defendant knowingly made false representations as to the characteristics, uses, status, title, possession, or benefits regarding the Vehicle, including without limitation, the Vehicle was not stolen; the Vehicle was free and clear from any legal impediments; and Plaintiff would be able to use the Vehicle free and clear of any legal impediments.

51. Defendant engaged in a deceptive trade practice.

52. The deceptive trade practice occurred in the course of Defendant's business, vocation, or occupation.

53. The deceptive trade practice significantly impacted the public as actual or potential consumers of Defendant's goods, services, or property.

54. Plaintiffs were actual consumers of the Defendant's goods, services, or property or were injured in the course of their business as a result of the deceptive trade practice.

55. Defendant has violated the Colorado Consumer Protection Act.

56. Defendant has breached its statutory duty.

57. The deceptive trade practice caused actual damages or losses to the Plaintiffs.

58. Defendant acted in bad faith by, *inter alia*, knowingly renting a stolen vehicle to Plaintiff Garcia.

59. Defendant acted in bad faith by, *inter alia*, failing to inform Plaintiffs the Vehicle was stolen.

60. Defendant acted in bad faith by, *inter alia*, advertising the Vehicle was free and clear from any legal impediments.

61. Defendant acted in bad faith by, *inter alia*, failing to confirm the Vehicle was removed from the NCIC stolen vehicle database prior to renting the same to Plaintiff Garcia.

62. Defendant acted in bad faith by, *inter alia*, failing to confirm the Vehicle was removed from the NCIC stolen vehicle database prior to making the Vehicle available to rent to other consumers.

63. Defendant acted in a fraudulent, willful, knowing, or intentional manner and caused injuries, damages, or losses to Plaintiffs

64. Plaintiffs suffered injuries, damages, and/or losses as a result of Defendant's actions.

65. Plaintiffs are entitled to, *inter alia,* treble damages under the Colorado Consumer Protection Act.

66. Defendant is the direct and proximate cause of Plaintiffs' injuries, damages, and/or losses.

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract)**
**(Plaintiff Garcia)**

67.    All paragraphs of this Complaint are incorporated into this Second Claim for Relief as if fully written and set forth.

68.    Defendant is bound by the terms of the Rental Agreement (Terms and Conditions).

69.    Plaintiff Garcia fully performed her obligations under the contract. Plaintiff Garcia detrimentally relied upon Defendant's promises with respect to:

a.    the Vehicle was not listed as stolen in any database;

b.    the Vehicle being free and clear from any legal impediments;

c.    Plaintiff would be able to use the Vehicle free and clear of any legal impediments.

70.    Defendant has demonstrated, by words or conduct, a clear and definite intention not to honor the terms of the Rental Agreement (Terms and Conditions).

71.    Defendant has materially breached the agreement by, *inter alia*.:

a.    Advertising the Vehicle as being free and clear from any legal impediments;

b.    knowingly renting a stolen vehicle to Plaintiff Garcia;

c.    failing to inform Plaintiff Garcia the Vehicle was stolen;

d.    failing to confirm the Vehicle was removed from the NCIC stolen vehicle database prior to renting the same to Plaintiff Garcia.

e.    failing to confirm the Vehicle was removed from the NCIC stolen vehicle database prior to making the Vehicle available to rent to other consumers.

72.    Defendant's material breach of the Rental Agreement (Terms and Conditions) gives rise to a breach of contract claim.

73.    Defendant has breached their promises, representations and warranties with respect to the Rental Agreement (Terms and Conditions).

74.　Plaintiff Garcia relied upon such promises, representations and warranties, and the same formed material consideration and inducement to Plaintiff Garcia in entering into the Rental Agreement (Terms and Conditions).

75.　Plaintiff Garcia has incurred pecuniary and other damages due to Defendant's breach/es.

76.　Plaintiff Garcia is entitled to, rescission, restitution, and/or damages

**THIRD CLAIM FOR RELIEF**
**(Breaches of Covenant of Good Faith)**
**(Plaintiff Garcia)**

77.　All paragraphs of this Complaint are incorporated into this Third Claim for Relief as if fully written and set forth herein.

78.　Defendant expressly promised Plaintiff Garcia, and owed a covenant, an obligation of good faith and fair dealing.

79.　Defendant had a duty to perform the terms and conditions in Rental Agreement (Terms and Conditions) in good faith.

80.　Defendant had a concomitant duty to refrain from doing things that would deprive Plaintiff Garcia of the reasonable and mutually anticipated benefits of those agreements.

81.　Defendant's course of conduct towards Plaintiff Garcia constituted bad faith and was in breach of the implied covenant of good faith and fair dealing.

82.　Defendant's conduct deprived Plaintiff Garcia of the reasonable expectation of benefiting from the contract, as described herein above.

83.　Defendant's breach of the implied covenant of good faith and fair dealing caused Plaintiff Garcia's losses and consequential damages in amounts to be proven at trial.

**FOURTH CLAIM FOR RELIEF**
**(False Representations)**
**(Plaintiff Garcia)**

84. All paragraphs of this Complaint are incorporated into this Fourth Claim for Relief as if fully written and set forth herein.

85. Defendant falsely told Plaintiff Garcia:

   a. the Vehicle was free and clear from any legal impediments;

   b. Plaintiff would be able to use the Vehicle free and clear of any legal impediments.

86. Defendant falsely advertised the Vehicle was free and clear from any legal impediments.

87. Defendant knew those representations were false at the time it rented the Vehicle to Plaintiff Garcia.

88. Defendant knowingly rented a stolen vehicle to Plaintiff Garcia.

89. Defendant failed to inform Plaintiff Garcia the Vehicle was stolen

90. Defendant failed to confirm the Vehicle was removed from the NCIC stolen vehicle database prior to renting the same to Plaintiff Garcia.

91. Defendant made these false representations of facts.

92. The facts were material.

93. At the time the representations were made Defendant knew the representations were false.

94. Defendant made the representations with the intent that Plaintiff Garcia would rely on the representations.

95. Plaintiff Garcia relied on the representations.

96. Plaintiff Garcia's reliance was justified.

97. Plaintiff Garcia's reliance caused injuries, damages, or loses.

**FIFTH CLAIM FOR RELIEF**
**(Negligent Misrepresentation)**
**(Plaintiff Garcia)**

98. All paragraphs of this Complaint are incorporated into this Fifth Claim for Relief as if fully written and set forth herein.

99. Prior to, and during the negotiations for, the Rental Agreement Defendant gave false information to Plaintiff Garcia regarding:

   a. the Vehicle was not stolen;

   b. the Vehicle was free and clear from any legal impediments;

   c. Plaintiff would be able to use the Vehicle free and clear of any legal impediments.

100. Defendant gave such information to Plaintiff Garcia in the course of Defendant's business relations with Plaintiff Garcia.

101. Defendant gave the information to Plaintiff Garcia for the use of Plaintiff Garcia when she was in the process of renting the Vehicle.

102. Defendant was negligent in obtaining or communicating the information.

103. Defendant gave the information with the intent or knowing that Plaintiff Garcia would act in reliance on the information.

104. Plaintiff Garcia reasonably and/or justifiably relied on the information supplied by Defendant.

105. Plaintiff Garcia's reliance on the information supplied by Defendant caused damage to Plaintiff Garcia.

106. Plaintiff Garcia did not, and could not have, discovered or learned of Defendant's negligent misrepresentation until she was stopped and detained at gunpoint by law enforcement.

107. Defendant's actions were the proximate cause of Plaintiff Garcia's damages.

### SIXTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)
### (All Plaintiffs)

108. All paragraphs of this Complaint are incorporated into this Sixth Claim for Relief as if fully written and set forth herein.

109. Defendant engaged in extreme and outrageous conduct with respect to subjecting Plaintiffs to the imminent harm and dangers associated with possession and operating a stolen vehicle.

110. Defendant did so recklessly and/or with the intent of causing Plaintiffs severe emotional distress.

111. Considering Defendant is in the business of renting vehicles to consumers such as Plaintiffs, Defendant's conduct was so outrageous in character, and so extreme in degree, that a reasonable member of the community would regard the conduct as atrocious, going beyond all possible bounds of decency, and utterly intolerable in a civilized community.

112. Defendant's conduct caused Plaintiffs severe emotional distress.

113. Plaintiff have suffered injuries, damages, and/or losses as a result of Defendant's extreme and outrageous conduct.

114. Defendants are the direct and proximate cause of Plaintiffs' injuries, damages, and/or losses.

**SEVENTH CLAIM FOR RELIEF**
**(Negligence)**
**(Plaintiff RQ and Murray)**

115. All paragraphs of this Complaint are incorporated into this Seventh Claim for Relief as if fully written and set forth herein.

116. Defendant owed a legal duty to Plaintiffs RQ and Murray.

117. Plaintiffs RQ and Murray were reasonably foreseeable as passengers in the Vehicle.

118. Defendant owed a legal duty to Plaintiffs RQ and Murray as passengers in the Vehicle.

119. As passengers in the Vehicle, Plaintiffs RQ and Murray are consumers of Defendant.

120. Defendant owed a legal duty to its consumers.

121. Defendant was negligent in:

   a. Continuing to rent a stolen vehicle;

   b. Advertising the Vehicle was free and clear from any legal impediments;

   c. Advising Plaintiff Garcia she would be able to use the Vehicle free and clear of any legal impediments.

   d. knowingly renting a stolen vehicle to Plaintiff Garcia;

   e. failing to inform Plaintiff Garcia the Vehicle was stolen;

   f. failing to confirm the Vehicle was removed from the NCIC stolen vehicle database prior to renting the same to Plaintiff Garcia.

   g. failing to confirm the Vehicle was removed from the NCIC stolen vehicle database prior to making the Vehicle available to rent to other consumers.

122. Defendant failed to act as a reasonably careful person would do under the same or similar circumstance.

123. Defendant failed to act with a degree of care which a reasonably careful person would use under the same or similar circumstances.

124. Defendant, as a rental car company, has a duty at all times, to protect consumers from renting a stolen vehicle.

125. Defendant, as a rental car company, has a duty at all times, to insure the vehicle it is renting is not reported as stolen prior to allowing a consumer to possess it.

126. As a direct, proximate, and foreseeable result of Defendant's negligence, Plaintiffs suffered injuries and damages as alleged herein.

**EIGHTH CLAIM FOR RELIEF**
**(Negligent Infliction of Emotional Distress)**
**(Plaintiffs RQ and Murray)**

127. All paragraphs of this Complaint are incorporated into this Eighth Claim for Relief as if fully written and set forth herein.

128. Defendant was negligent.

129. Defendant's negligence created an unreasonable risk of physical harm to Plaintiffs RQ and Murray.

130. Plaintiffs RQ and Murray were part of the event caused by Defendant's negligence.

131. Plaintiffs RQ and Murray were in the zone of danger that resulted from Defendant's negligence.

132. Plaintiffs RQ and Murray's claims are independent of one another as each experienced the traumatic event individually.

133. Each Plaintiff, individually, experienced the harm directly.

134. Defendant's negligence caused Plaintiffs RQ and Murray to be put in fear for their own safety and such fear was shown by physical consequences or long continued emotional disturbance, rather than only momentary fright, shock, or other similar and immediate emotional distress; and

135. Plaintiffs RQ and Murray's fear caused them injuries, damages, or losses.

## PLEAD IN THE ALTERNATIVE

With respect to Plaintiff Garcia, in the event Defendant asserts the Rental Agreement (Terms and Conditions) are devoid of the duties, obligations, promises, representations, covenants, or agreements plead above, Plaintiff Garcia pleads the following claims in the alternative.

## NINTH CLAIM FOR RELIEF
### (Negligence)
### (Plaintiff Garcia)

136. All paragraphs of this Complaint are incorporated into this Ninth Claim for Relief as if fully written and set forth herein.

137. Defendant owed Plaintiff Garcia an independent duty of care.

138. Plaintiff Garcia's factual assertions are not directly addressed by the Rental Agreement (Terms and Conditions).

139. Plaintiff Garcia's factual assertions fall outside of the scope of the duties contained in the Rental Agreement (Terms and Conditions).

140. The Rental Agreement (Terms and Conditions) is silent as to the following duties, obligations, promises, representations, covenants, or agreements:

   a. the Vehicle was not listed as stolen in any database;

   b. the Vehicle being free and clear from any legal impediments;

   c. Plaintiff would be able to use the Vehicle free and clear of any legal impediments.

141. Defendant was negligent.

142. Defendant owed a legal duty to Plaintiff Garcia as a consumer.

143. Defendant was negligent in:

   a. Continuing to rent a stolen vehicle;

   b. Advertising the Vehicle was free and clear from any legal impediments;

   c. Advising Plaintiff Garcia she would be able to use the Vehicle free and clear of any legal impediments.

   d. knowingly renting a stolen vehicle to Plaintiff Garcia;

   e. failing to inform Plaintiff Garcia the Vehicle was stolen;

   f. failing to confirm the Vehicle was removed from the NCIC stolen vehicle database prior to renting the same to Plaintiff Garcia.

   g. failing to confirm the Vehicle was removed from the NCIC stolen vehicle database prior to making the Vehicle available to rent to other consumers.

144. Defendant failed to act as a reasonably careful person would do under the same or similar circumstance.

145. Defendant failed to act with a degree of care which a reasonably careful person would use under the same or similar circumstances.

146. Defendant, as a rental car company, has a duty at all times, to protect consumers from renting a stolen vehicle.

147. Defendant, as a rental car company, has a duty at all times, to insure the vehicle it is renting is not reported as stolen prior to allowing a consumer to possess it.

148. As a direct, proximate, and foreseeable result of Defendant's negligence, Plaintiff Garcia suffered injuries and damages as alleged herein.

**TENTH CLAIM FOR RELIEF**
**(Negligent Infliction of Emotional Distress)**
**(Plaintiff Garcia)**

149.    All paragraphs of this Complaint are incorporated into this Tenth Claim for Relief as if fully written and set forth herein.

150.    Defendant was negligent.

151.    Defendant's negligence created an unreasonable risk of physical harm to Plaintiff Garcia.

152.    Plaintiff Garcia was part of the event caused by Defendant's negligence.

153.    Plaintiff Garcia was in the zone of danger that resulted from Defendant's negligence.

154.    Plaintiff Garcia's claims are independent of the other Plaintiffs as each experienced the traumatic event individually.

155.    Each Plaintiff, individually, experienced the harm directly.

156.    Defendant's negligence caused Plaintiff Garcia to be put in fear for their own safety and such fear was shown by physical consequences or long continued emotional disturbance, rather than only momentary fright, shock, or other similar and immediate emotional distress; and

157.    Plaintiff Garcia's fear caused them injuries, damages, or losses.

**WHEREFORE,** Plaintiffs hereby prays for judgment in her favor and against Defendant, in amount to be determined by the trier of fact, including but not limited to:

A.  Judgment for all damages proximately resulting from the negligence of Defendant, and or as a result of liability (whether premises or not), including all economic and non-economic damages;
B.  Pre and post-judgment interest from the date of injury in such amounts prescribed by law;
C.  Costs of litigation;

D. Award Plaintiff prejudgment and post-judgment interest on such award of damages for each injury complained of at the legal rate as provided by Colorado law, including, but not limited to, C.R.S. §13-21-101; and/or

E. Award Plaintiff their costs as provided by Colorado law and any other legal and/or equitable relief that the Court deems just and reasonable under the circumstances.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial in the instant matter.  Plaintiffs have remitted the applicable fees.

Respectfully submitted,
LEROUX LAW LLC


 /s/ L. Paul LeRoux II
In accordance with C.R.C.P. 121 §1-26(9) a printed copy of this document with original signatures is being maintained by the filing party and will be made available for inspection by other parties or the court upon request.

L. Paul LeRoux II, #35987
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th of July 2026, a true and correct copy of the foregoing **COMPLAINT** was electronically filed with the Court through ICCES and mailed to Defendant as provided for in the Rental Agreement for purposes of notice of any claims.

Defendant Sixt Rent A Car LLC
Attention: Corporate Creations Network Inc.,
801 US Highway 1
North Palm Beach, FL 33408
(via CCEF)

LEROUX LAW LLC


  /s/ L. Paul LeRoux II
In accordance with C.R.C.P. 121 §1-26(9) a printed copy of this document
with original signatures is being maintained by the filing party and will be
made available for inspection by other parties or the court upon request.

| | |
|---|---|
| **DISTRICT COURT, LA PLATA COUNTY STATE OF COLORADO** <br> 1060 E. 2ND Ave, <br> Durango, CO 81301 | **DATE FILED** <br> July 4, 2026 7:16 PM <br> FILING ID: 955260B6692BB <br> CASE NUMBER: 2026CV30112 |
| **LUCINDA GARCIA, RQ (a minor), ALASIAH MURRAY** <br> **and** <br> Plaintiffs, <br><br> **v.** <br><br> **SIXT RENT A CAR LLC, a Foreign Limited Liability Company,** <br> Defendant | ▲ Court Use Only ▲ |
| Attorney for Plaintiffs: <br> L. Paul LeRoux II #35987 <br> LeRoux Law LLC <br> 361 S. Camino Del Rio #328 <br> Durango, CO 81303 <br> Cell: 303-641-0109 <br> Email: paul@lerouxlegal.com | **Case Number: 26 CV** <br><br><br><br> Division:    Courtroom: |
| **SUMMONS** | |

**TO THE ABOVE NAMED DEFENDANT:**

Defendant Sixt Rent a Car LLC
c/o Registered Agent
201 E 4th St
Loveland, CO 80537-5601

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

1

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

Dated this 4th day of July 2026.

LEROUX LAW LLC

By: /s/ L. Paul LeRoux II

L. Paul LeRoux, #35987
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th of July 2026, a true and correct copy of the foregoing was electronically filed with the Court through ICCES and mailed to Defendant as provided for in the Rental Agreement for purposes of notice of any claims.

Defendant Sixt Rent A Car LLC
Attention: Corporate Creations Network Inc.,
801 US Highway 1
North Palm Beach, FL 33408
(via CCEF)

LEROUX LAW LLC

/s/ L. Paul LeRoux II

In accordance with C.R.C.P. 121 §1-26(9) a printed copy of this document with original signatures is being maintained by the filing party and will be made available for inspection by other parties or the court upon request.

EXHIBIT 1



# RENTAL AGREEMENT 9508168924

DATE FILED
July 4, 2026 7:16 PM
FILING ID: 955260B6692BB
CASE NUMBER: 2026CV30112



| Time out | Renter/ Driver |
|---|---|
| 28.06.2024 / 07:35 PM | Lucinda Garcia |
| Denver Int Airport | NO ADDITIONAL AUTHORIZED DRIVERS WITHOUT OUR PRIOR WRITTEN CONSENT |

| Due in | Renter/ Invoice Recipient |
|---|---|
| 08.07.2024 / 12:30 PM | |
| Denver Int Airport | |
| 23790 E 78th Ave, Denver, CO | - |
| 80249-6387 | |

**Res-No.:** 9712486896

| Description: | Amount: | Single price: | Sum: | |
|---|---|---|---|---|
| Rental days | 10 | 110.24 USD | 1,102.40 USD | A1 |
| Vehicle License Rec. Fee | 10 | 0.41 USD | 4.10 USD | A1 |
| Rental Facility Charge | 10 | 6.00 USD | 60.00 USD | A1 |
| Colorado Road Safety Fee | 10 | 2.13 USD | 21.30 USD | A0 |
| AP Concession Recovery Fee | 11.11 % | 122.93 USD | 122.93 USD | A1 |
| A1 Specific Ownership Tax 2.00% + Sales Tax 11.25% | | | 170.85 USD | |
| A0 Tax exempt | | | | |

| **Sum: gross** | **1,481.58 USD** |
|---|---|

All designated discounts have been included in the stated final price.

This rate is not eligible for the collection of air miles or bonus points.

## VEHICLE DETAILS

| License plate: | CA-8XZM050 |
|---|---|
| Model: | TOYOT SEQUOIA UTL PET AUT |
| Mileage: | 55197 |
| Parking spot: | TA---415 |
| Vehicle class: | FFAR |
| Fuel level: | 8 / 8 |

## PAYMENT DETAILS

| Payment method: | MASTERCARD |
|---|---|
| Card: | *************562 |
| Voucher: | SX100001316354 |
| Voucher value incl. TAX: | 1481.58 USD |
| Authorization: | 28/06/2024 19:26 200.00 USD |
| Merchant-ID: | RAC_88_POS |
| Transaction-ID: | 40629XGY2GUHFXT1SB |
| Terminal-ID: | 45954pp171 |
| Receipt no.: | 8295 |
| PayCor-ID: | 40629XGY2GUHFXT1SB |
| EMV-Data: | A0000000041010/0000008000 /E800/0C87AB821EB8A3D1/00 |

## BOOKING DETAILS

| Incl. mileage: | all ml incl. |
|---|---|

We offer for an additional charge the following optional products: Loss Damage Waiver (LDW), Partial Damage Waiver (PDW), Personal Accident Coverage (PAC), Roadside Assistance, Supplemental Liability Insurance (SLI), and Supplemental Liability Insurance 300 (SLI 300) for certain select vehicles. Before deciding whether to purchase any of these products, you may wish to determine whether your personal insurance or credit card affords you coverage during the rental period. The purchase of any of these products is not required to rent the vehicle.

NOTICE: This contract offers, for an additional charge, a loss damage waiver to cover your responsibility for damage to the vehicle. You are advised not to sign this waiver if you have rental vehicle collision coverage provided by certain gold or platinum credit cards or collision insurance on your own vehicle. Before deciding whether to purchase the loss damage waiver, you may wish to determine whether your own vehicle insurance affords you co-

Sixt Rent a Car, LLC
P.O. Box 8188
Fort Lauderdale, FL 33310
United States

reservations-usa@sixt.com
customerservice-usa@sixt.com
Call: 1 888 749 8227
Fax: 1 888 722 2980
www.sixt.com

Check or Money order
Sixt Rent a Car LLC
P.O. Box 8188
Fort Lauderdale, FL 33310

**Download SIXT App now**

EXHIBIT 1



verage for damage to the rental vehicle and the amount of the deductible under your own insurance coverage. The purchase of this loss damage waiver is not mandatory and may be waived. The limitations and exclusions that apply to the loss damage waiver are listed on paragraph 6 of the rental jacket. The daily cost of loss damage waiver and the total estimated cost of loss damage waiver is listed above.

You decline to purchase PAC.

You decline to purchase any supplemental liability insurance. You accept primary responsibility for, damage or injury you cause to others or their property.

Authorized Drivers are the only persons permitted to drive the Vehicle. If you permit anyone other than the Renter or an Additional Driver listed above to drive the Vehicle, or any other person defined as an Authorized Driver on the rental jacket, we will hold you responsible for damage to the Vehicle and for damage to others and their property caused by the unauthorized driver. Damage caused by unauthorized drivers is not covered by Loss Damage Waiver. There is a small fee to add Additional Drivers to this Agreement.

You decline to purchase and pay for a full tank of fuel. If you do not return the Vehicle full, you agree to pay us for the fuel used at 11.99 USD per gallon, plus tax. If you have an electric Vehicle and you return the Vehicle with a charge below 80%, or below the charge level at which your vehicle was provided, you agree to pay a USD 35 charging fee. In addition, if your Vehicle is returned with a charge below 20% you agree to pay an additional USD 20 fee (in addition to the USD 35 charging fee).

You decline to purchase Roadside Assistance.

Each time you drive the Vehicle through an automated express/toll lane, the license plate is photographed and we are notified that you used the express/toll lane. We offer Toll Pass, an additional service that permits you to use automated express/toll lanes at a fixed daily price. Certain toll roads do not accept cash. If you do not purchase Toll Pass, to avoid toll violations and associated fines, fees, and taxes (and our administrative fees for processing violations and citations), you must pay all tolls with a personal transponder; use only cash lanes and pay cash (even if you purchased Toll Pass); plan a route to avoid tolls; or consult local authorities for other payment methods.
You decline to purchase Toll Pass. If you use an automated express/toll lane without purchasing Toll Pass, you will pay us our administrative fee of 14.99 USD per usage day, up to a maximum amount of $90 per rental agreement plus the applicable toll fee for each time you use an automated express/toll lane during your rental according to the terms of Paragraphs 5 and 5a of the Terms and Conditions. This fee will be charged to your credit card account after the close of this rental transaction.

Pursuant to the requirements of C.R.S. 43-3-302(7) and C.R.S. 42-4-1209, You (the Customer) are liable for payment of any toll evasion violation civil penalties and any parking violation fines incurred on or after the date you take possession of the Vehicle. If such a penalty is incurred, your name, address, and state driver's license number will be furnished to the toll road or toll highway company (for toll violations) or to the prosecutorial division of the appropriate jurisdiction (for parking violation fines).

You decline to purchase Personal Property Coverage (PPC).

GEOGRAPHICAL RESTRICTIONS: The Vehicle may only be used in the Contiguous United States and the Canadian province of British Columbia (the "Region"). If the vehicle is driven in violation of the territorial restricti-

Sixt Rent a Car, LLC
P.O. Box 8188
Fort Lauderdale, FL 33310
United States

reservations-usa@sixt.com
customerservice-usa@sixt.com
Call: 1 888 749 8227
Fax: 1 888 722 2980
www.sixt.com

reservations-usa@sixt.com
customerservice-usa@sixt.com
Call: 1 888 749 8227
Fax: 1 888 722 2980
www.sixt.com

**Download
SIXT App now**

2

EXHIBIT 1



ons, we will charge you an excess mileage fee of $0.50 for each mile the vehicle has been driven during the rental. This fee does not limit in any way the total amount or any compensation owed to us under this Agreement. The Vehicle shall not be used in Mexico under any circumstances.

For One-Way Rentals: If you have a reservation for a one way rental to return the Vehicle in a state other than the state of pick-up (as shown on the Face Page), the territorial restrictions described above do not apply. However, you may only use the Vehicle in the continental United States, Ontario British Columbia, Canada.

All vehicles are non-smoking. A USD 400 Cleaning Fee will be assessed for violations to this policy.

The vehicle has the following damage:

| | | | |
|---|---|---|---|
| **Bumper, front** | **Driver side** | **scratch** | **5-10 cm (down to primer)** |

The vehicle has the following minor damage:

| | | | |
|---|---|---|---|
| **Lift-/Tailgate (US)** | **middle** | **scratch** | **< 5 cm (down to primer)** |
| **Door, front** | **Passenger side** | **scratch** | **< 5 cm superficial** |
| **Door, front** | **Passenger side** | **Dent** | **up to 1 cm (without paint damage)** |
| **Door, front** | **Passenger side** | **scratch** | **< 5 cm (down to primer)** |
| **Door, front** | **Driver side** | **scratch** | **< 5 cm (down to primer)** |
| **Hood (US)** | **Driver side** | **scratch** | **5-10 cm superficial** |
| **Door, rear** | **Driver side** | **scratch** | **< 5 cm (down to primer)** |
| **Door, rear** | **Passenger side** | **Dent** | **up to 1 cm (without paint damage)** |
| **Fender (US)** | **Passenger side** | **scratch** | **5-10 cm superficial** |
| **Bumper, front** | **Passenger side** | **scratch** | **> 10 cm superficial** |
| **Door, rear** | **Driver side** | **Dent** | **up to 1 cm (without paint damage)** |
| **Quarterpanel (US)** | **Driver side** | **scratch** | **< 5 cm (down to primer)** |
| **Door, rear edge** | **Driver side** | **scratch** | **< 5 cm (down to primer)** |
| **Windshield (US)** | **Driver side** | **stone chip** | **surface only** |
| **Door, rear** | **Driver side** | **Dent** | **up to 1 cm (with paint damage)** |
| **Door, rear edge** | **Passenger side** | **scratch** | **< 5 cm (down to primer)** |
| **Windshield (US)** | **Passenger side** | **stone chip** | **surface only** |
| **Door, front** | **Driver side** | **scratch** | **5-10 cm superficial** |
| **Wing / Fender, rear** | **Passenger side** | **Dent** | **> 3 cm (without paint damage)** |
| **Bumper, front** | **Passenger side** | **scratch** | **< 5 cm (down to primer)** |
| **Bumper, rear** | **Passenger side** | **scratch** | **< 5 cm (down to primer)** |
| **Side view Mirror** | **Passenger side** | **scratch** | **5-10 cm superficial** |
| **Bumper, rear** | **Driver side** | **scratch** | **< 5 cm (down to primer)** |
| **Grill** | **middle** | **scratch** | **5-10 cm superficial** |
| **Grill** | **middle** | **scratch** | **5-10 cm superficial** |

Vehicle Condition: It is your responsibility to inspect the Vehicle for damage before leaving our facility. If you discover damage, return to our office and notify us of the damage.

By signing below, you agree to the Terms and Conditions printed on the rental jacket and to the terms found on this Face Page, which together constitute this Agreement. You acknowledge that you have been given an opportunity to read this Agreement before being asked to sign it, and that all information you have provided is true and correct.

Your signature constitutes your agreement to purchase the optional products described above. Your signature allows us to process credit or debit card vouchers in your name for all amounts due us under this Agreement. You permit us to reserve against your card at the beginning of the rental an amount up to three times the esti-

Sixt Rent a Car, LLC
P.O. Box 8188
Fort Lauderdale, FL 33310
United States

reservations-usa@sixt.com
customerservice-usa@sixt.com
Call: 1 888 749 8227
Fax: 1 888 722 2980
www.sixt.com

reservations-usa@sixt.com
customerservice-usa@sixt.com
Call: 1 888 749 8227
Fax: 1 888 722 2980
www.sixt.com

**Download**
**SIXT App now**

EXHIBIT 1



mated total charges as a deposit, in no event less than USD 200, or the amount listed on the Face Page. For Vehicles in the executive or luxury categories, you authorize us to reserve up to USD 5,000 against your card. We may use your deposit to pay any amounts owed to us under this Agreement. You authorize us to charge your credit/debit card after the rental concludes for all and parking violations and fines or penalties assessed against you, us, or the Vehicle during the rental plus our administrative fee of USD 40.00 for each such charge and to release your rental and credit/debit card information to the charging authorities for processing purposes.

I further acknowledge and consent to the dispute resolution provisions contained in the Terms and Conditions.



Driver Signature

Accident or Breakdown Hotline: 1-888-749-8543

You want to extend your current rental period or get an overview of your previous rents? Then register or log in at www.sixt.com/mysixt, your online customer portal.

Internet: www.sixt.com
E-Mail: reservations-usa@sixt.com, customerservice-usa@sixt.com
Call: +1(888)749-8227, Fax: +1(888)722-2980

Thank you for choosing Sixt. Have a pleasant journey!

29.06.2024 01:35:31

Sixt Rent a Car, LLC
P.O. Box 8188
Fort Lauderdale, FL 33310
United States

reservations-usa@sixt.com
customerservice-usa@sixt.com
Call: 1 888 749 8227
Fax: 1 888 722 2980
www.sixt.com

reservations-usa@sixt.com
customerservice-usa@sixt.com
Call: 1 888 749 8227
Fax: 1 888 722 2980
www.sixt.com

**Download
SIXT App now**

4

EXHIBIT 2



# Ready to rent.

## Terms and Conditions Rental Jacket

DATE FILED
July 4, 2026 7:16 PM
FILING ID: 955260B6692BB
CASE NUMBER: 2026CV30112

feel the motion.

EXHIBIT 2

# TIPS FOR A SMOOTH RENTAL PROCESS:

## BEFORE

 Inspect your vehicle for any existing damages and verify if they are listed on your rental agreement. If not, alert a SIXT employee to record them BEFORE leaving the branch.

## DURING

 Refill your tank before returning if you did not purchase our prepaid fuel option, otherwise, you will be charged a per-gallon rate as stated in your contract. Keep a copy of your receipt as you may be asked to present it upon returning the vehicle.

## AFTER

 Check the trunk, glove box, center console, and under the seats for personal belongings before returning your vehicle.

 A Customer Service Associate will log the fuel, miles, and any damages.

 You will receive an invoice via email within 24 hours of returning your car.

2

# Rental Agreement Terms and Conditions "Terms and Conditions"

EXHIBIT 2

**1. Definitions.** "Agreement" means the Terms and Conditions in these Terms and Conditions and the provisions found on the Face Page provided to you on the day of your rental (the "Face Page"). "You" or "your" means the person identified as the renter in this Agreement, any person signing this Agreement, any Authorized Driver, or any person or organization to whom charges are billed by us at its or the renter's direction. All persons referred to as "you" or "your" are jointly and severally bound by this Agreement. "We", "our", "Sixt" or "us" means Sixt Rent a Car, LLC. "Additional Driver" means a person we list on the Face Page of this Agreement. "Authorized Driver" means the renter, any Additional Driver, or any other individual but only where required by applicable state law. An "Unauthorized Driver" means anyone who is not the renter, any Additional Driver, nor any other individual as required by applicable state law. For rentals with pick-up locations in California, Illinois, Missouri, Nevada, Oregon, Texas, New York, Utah, and Wisconsin, "Authorized Driver" includes your spouse. For rentals with pick-up locations in California, Illinois, Missouri, Nevada, Oregon, Texas, Utah, and Wisconsin "Authorized Driver" includes your employer, and co-workers (who are not your employees, except for Wisconsin) who are engaged in business activity with you. For rentals with pick-up locations in Illinois, Missouri, and Texas, "Authorized Driver" also includes employees who are engaged in business activity with you. For renters with pick-up locations in Illinois, Missouri, New York, Oregon, Texas, Utah, and Wisconsin, "Authorized Driver" also includes any person who drives the Vehicle to a medical or police facility under circumstances reasonably believed to constitute an emergency. For renters with pick-up locations in Utah and Wisconsin, "Authorized Driver" also includes any person who operates the Vehicle while parking it at a commercial establishment. Each Authorized Driver must have a valid driver's license for the duration of the rental period or their reservation period, whichever period is longer, and, at most locations, be at least age 21. For renters with pick-up locations in New York, the renter and renter's spouse must be at least 18 years old. Authorized Drivers are the only persons permitted to drive the Vehicle. To the extent permitted by law, we may charge an additional fee for each Authorized Driver (other than the renter). "Vehicle" means the motor vehicle identified in this Agreement and any vehicle we substitute for it, and all its tires, tools, accessories, equipment, keys and Vehicle documents, but "Vehicle" does not include portable navigation devices or other optional equipment ("Optional Equipment") that you rent from us. "LDW" means Loss Damage Waiver. "PDW" means Partial Loss Damage Waiver. "SDW" means Supplemental Damage Waiver. PDW and SDW are not offered in the states of California, Colorado, Nevada, North Carolina, Oregon, and Virginia. "Loss of Use" means the loss of our ability to use the Vehicle for any purpose (including, but not limited to non-rental uses such as general display of the Vehicle, display of the Vehicle for sale, non-revenue transportation by employees) due to damage to or loss of the Vehicle during your rental. "Diminished Value" means the difference between the value of the Vehicle immediately prior to damage or loss, and the value of the Vehicle after repair or replacement. "Vehicle License Fee" means our estimate of the average per day per vehicle portion of charges imposed by governmental authorities on us, including our total annual vehicle licensing, titling, plating, inspection, and registration costs, or to recover other similar charges as permitted by applicable law. We do not charge Vehicle License Fees in New Jersey or New York. For Virginia, the "Vehicle License Fee" means our estimated average per day per vehicle portion of our total annual vehicle licensing, titling, and registration costs.

**2. Rental, Indemnity, and No Warranties.** This is a contract for rental of the Vehicle. The price you are provided on your Face Page is only for the specific rental period on the Face Page. If you return your Vehicle early or late your price is subject to change. To the extent permitted by law, we may terminate this Agreement and repossess the Vehicle at your expense without notice to you, if you

3

breach this Agreement or if the Vehicle is abandoned or used in violation of law or this Agreement. To the extent permitted by law, you agree to indemnify us, defend us and hold us harmless from all claims, liability, costs and attorney fees we incur resulting from or arising out of this rental and your use of the Vehicle; and (b) We make no warranties, express, implied or apparent, regarding the Vehicle, no warranty of merchantability, and no warranty that the Vehicle is fit for a particular purpose. You agree not to alter the Vehicle or any Optional Equipment. If you or an Authorized Driver determine the Vehicle or any Optional Equipment is unsafe, you or the Authorized Driver shall stop operating the vehicle or Optional Equipment and notify us immediately. This Paragraph 2 applies to the fullest extent permitted by New Jersey law and does not relieve us of responsibility or liability imposed by New Jersey law, including the New Jersey Consumer Fraud Act or from any implied warranty of fitness under New Jersey law.

**3. Telematics Notice and Release.** You acknowledge that the Vehicle may be equipped with a telematics device, global positioning satellite ("GPS") technology, an electronic locator device, and/or an event data recorder. We may find, monitor, or disable the Vehicle through such systems if we deem it necessary, without warning or notice, to the extent permitted by applicable law. Remote monitoring may include the collection of Vehicle data, such as location, odometer, oil life, fuel level, tire pressure, battery charge, diagnostic trouble codes, and other elements that we may deem necessary. We are not responsible for the operability of any telematics navigational or other system included with the Vehicle. You acknowledge these systems may use cellular telephone, wireless technology, Bluetooth technology, or radio signals to transmit data, and therefore your privacy cannot be guaranteed. You authorize any person's use or disclosure of or access to location information, automatic crash notification, and operational vehicle reporting conditions of Vehicle as permitted by law. You shall inform any and all drivers and passengers of vehicle of the terms of this section and that you have authorized release of information as provided herein. You agree to release us and agree to indemnify, defend and hold us harmless for any damage to persons or property caused by failure of the telematics device to operate properly, or otherwise arising from the use of the telematics device. Third party telematics service providers are not our agents, employees, or contractors. Your use of a telematics system during the rental is subject to the terms of service and privacy policy of the third-party telematics system provider. The Vehicle may collect and store personal information if you chose to connect your smartphone or other device to the Vehicle's Infotainment System. SIXT does not access, collect or use any information that may be stored by the Infotainment System. If you choose to connect your device to the Infotainment System, you are representing that you understand that information from your device may be stored by the Vehicle's Infotainment System. This Paragraph 3 applies to the fullest extent permitted by New Jersey law and does not relieve us of responsibility or liability imposed by New Jersey law, including the New Jersey Consumer Fraud Act.

**4. Condition and Return of Vehicle.** You must return the Vehicle to our rental office or other location we identify, on the date and time specified in this Agreement, and in the same condition that you received it, except for ordinary wear. If the Vehicle is returned to any other office or location or left somewhere other than the office or location identified by us, you remain responsible for the safety of and damage to or loss of the Vehicle until we inspect it. In addition, you authorize us to charge your credit or debit card a one-way charge or service fee plus any additional costs incurred by us in the return of the Vehicle. If the Vehicle is returned after closing hours, you remain responsible for the safety of and damage to or loss of the Vehicle until we inspect it upon our next opening for business. Service to the Vehicle or replacement of parts or accessories during the rental must have our prior written approval. You must check and maintain all fluid levels, check that the Vehicle is in a roadworthy condition, lock the

4

EXHIBIT 2

Vehicle at all times when you are not operating it, and return the Vehicle with at least the same amount of fuel as when rented, unless we offer and you purchase a pre-paid fuel service. No refund or credit shall be issued if you return the Vehicle with a greater amount of fuel than when you received it.

> **FOR RENTALS WITH PICK-UP LOCATIONS IN COLORADO -- Failure to return the Vehicle within 72 hours of the due-in date is a felony according to Colorado Revised Statutes § 18-4-401.**

**5. Responsibility for Damage or Loss; Reporting to Police; Responsibility for Fees; Responsibility for Optional Equipment.** You are responsible for all damage to, and for loss or theft of, the Vehicle including damage caused by collision, weather, road conditions and acts of nature, even if you are not at fault. This includes damage caused by the optional use or misuse of autonomous features on the Vehicle. You agree you will follow all of the manufacturer's instructions when using autonomous features and that you will use them at your own risk. It is your responsibility to inspect the Vehicle for damage before leaving our facility. You are responsible for the cost of repair, or the actual cash retail value of the Vehicle on the date of the loss if the Vehicle is not repairable or if we elect not to repair the Vehicle. You are also responsible for Loss of Use (without regard to fleet utilization), Diminished Value, and our administrative expenses incurred processing a claim. You must report all accidents and incidents of theft and vandalism to us and the police as soon as you discover them. You are responsible for paying the charging authorities directly all parking citations, toll fees (subject to Section 5a below), fines for toll evasion, and other fees, fines, court costs (including on appeal) and penalties assessed against you, us, or the Vehicle during this rental. If you fail to pay any of these charges and we pay any part of them, you will reimburse us for all such charges and, in addition, pay us an administrative fee of up to $50 for each such charge. You also agree that we may provide any information requested by law enforcement authorities as part of any investigation of an alleged infraction. To the extent any tickets, citations, fines, penalties, or administrative fees are assessed against Sixt because of the operation or use of the Vehicle from the time you take possession of it until it is returned to us, you agree to indemnify us from all resulting damages, losses, costs, and expenses. We have no obligation to contest or otherwise defend you against any alleged infraction. However, you agree we may make the decision to pay, in our sole discretion, any of the fines or fees discussed in this section on your behalf without your prior approval and seek reimbursement from you per the terms of this section.  You authorize us to charge your credit or debit card for same. For rentals with pick-up locations in the state of California, we will be responsible for any fines assessed against you, us, or the Vehicle that are based solely on the Vehicle's lack of toll transponder. Sixt may use a third party as our agent for processing and billing any tickets, citations, fines, and penalties. You authorize us to release the rental and payment card information regarding your rental to our agent for the purpose of processing and billing you for any tickets, citations, fines, and penalties incurred by you or assessed against us or the Vehicle during your rental plus an administrative fee not to exceed $50 per violation. You authorize our agent to contact you directly regarding any ticket, citation, fine, or penalty assessed in connection with the use of the Vehicle from the time you take possession until the time it is returned to us.

**a. Tolls.** You agree that if you do not purchase one of the toll products offered by Sixt that you will use "Cash" lanes only on toll roads during your rental. Failure to pay the toll at a Cash lane or driving the Vehicle through an automated express lane will result in additional fees. If you use an automated express/toll lane without using your own transponder or purchasing one of our toll products you will pay us our administrative fee of $15.99 per usage day, up to a maximum of $99 per rental agreement,

EXHIBIT 2

plus the applicable toll fee for each time you use an automated express/toll lane during your rental. This fee will be charged to your credit card account after the close of your rental transaction.

**Your responsibility for damage to or loss of the Vehicle is limited by law in the following jurisdictions:**

FOR RENTALS WITH PICK-UP LOCATIONS IN COLORADO -- Pursuant to the requirements of C.R.S. 43-3-302(7) and C.R.S. 42-4-1209, you are liable for payment of any toll evasion violation civil penalties and any parking violation fines incurred on or after the date you take possession of the Vehicle. If such a penalty is incurred, your name, address, and state driver's license number will be furnished to the toll road or toll highway company (for toll violations) or to the prosecutorial division of the appropriate jurisdiction (for parking violation fines).

**b. Optional Equipment.** Upon request and subject to availability, we offer certain Optional Equipment, including but not limited to, Child Seats and Global Positioning Devices, for your use during the rental at an additional charge. All Optional Equipment is rented AS IS and must be returned to us at the end of the rental in the same condition as when rented. Optional Equipment is not part of the car. You are responsible for any loss or damage to any Optional Equipment regardless of the cause, even if you have accepted LDW, SDW, or PDW. You should review the operational instructions for all Optional Equipment before leaving the rental location. If you rent a Child Seat from us, you have the sole responsibility to inspect and properly install the seat yourself. We make no warranties, express, implied or apparent, regarding the Child Seat or any other Optional Equipment, no warranty of merchantability, and no warranty that the Child Seat or any other Optional Equipment is fit for a particular purpose. You are responsible for all injury or damage arising out of, or related to your use of the Child Seat, or any other Optional Equipment. If you choose to rent a Global Positioning Device ("GPS") from us, you are responsible for returning it in the same condition as when rented with all accessories provided, including the carrying case, the car charger, the windshield mount, and, in states where provided, the console beanbag mount ("GPS Accessories"). If the GPS or GPS Accessories are lost or damaged so as to, in our sole opinion, require repair or replacement, you will pay us the fair market value for its repair or replacement.

**6. Damage Waivers; Prohibited Use of the Vehicle; Roadside Assistance.** LDW, SDW, and PDW are not insurance, are optional, and may duplicate other coverage that you have. If you purchase LDW, SDW, or PDW, we waive your responsibility for the portion of damage to or loss of the Vehicle that is stated on the Face Page. However, damage to, or loss of, EV charging kits, vehicle jacks, tire repair kits, or like accessories that are not part of the vehicle itself, shall not be covered by LDW, SDW, or PDW and your responsibility for damage to same will not be waived. **PDW AND SDW ARE NOT AVAILABLE IF YOU PICK-UP YOUR RENTAL IN THE STATES OF CALIFORNIA, COLORADO, NEVADA, NORTH CAROLINA, OREGON, or VIRGINIA. We will not waive your responsibility, even though you purchased LDW, SDW, or PDW,** if you gave us false, fraudulent or misleading information prior to the rental or during the rental, and we would not have rented the Vehicle to you or extended the rental period, if we were given true information; or if you fail to notify us and the police of an accident, theft or vandalism involving the Vehicle, or if damage to or loss of the Vehicle is the result of a prohibited use, including damage or loss that: (a) is caused by anyone who is not an Authorized Driver; (b) is caused by anyone under the influence of a drug or

6

alcohol; (c) occurs while the Vehicle is used during the commission of a felony or other crime, other than a minor traffic violation; (d) occurs while carrying persons or property for hire, while pushing or towing anything, during any race, speed test or contest, or while teaching anyone to drive; (e) results from carrying dangerous, hazardous, or illegal material; (f) results from use of the Vehicle outside the geographic area specified on the Face Page, or from use in Mexico; (g) is caused by driving on unpaved roads; (h) occurs while transporting more persons than the Vehicle has seat belts, while carrying persons outside the passenger compartment, or while transporting children without approved child safety seats as required by law; (i) occurs when the odometer has been tampered with or disconnected; (j) occurs when the Vehicle's fluid levels are low, or it is otherwise reasonable to expect you to know that further operation would damage the Vehicle; (k) is caused by carrying anything on the roof, trunk or hood of the Vehicle, or by inadequately secured cargo inside the Vehicle, or by an animal transported in the Vehicle; (l) occurs when the Vehicle is unlocked, or the keys or key fob are lost, stolen or left in the Vehicle when not operating it; (m) is caused, where applicable, by anyone who lacks experience operating a manual transmission; (n) results from failure to allow sufficient height or width clearance; (o) results from your willful, wanton or reckless act or misconduct; (p) results from fueling with a type of fuel improper for the specific Vehicle; or (q) results from driving or operating the Vehicle while using a hand-held wireless communication device or other device that is capable of receiving or transmitting telephonic communications, electronic data, mail or text messages while not in a hands-free mode. In the event of a loss due to theft of the Vehicle, we will not waive your responsibility for the loss unless you return to us all the Vehicle keys or ignition devices we gave you at the time of rental.

FOR RENTALS WITH PICK-UP LOCATIONS IN COLORADO -- NOTICE: This contract offers, for an additional charge, a Loss Damage Waiver to cover your responsibility for damage to the Vehicle. You are advised not to sign this waiver if you have Rental Vehicle Collision Coverage provided by certain Gold or Platinum credit cards or collision insurance on your own Vehicle. Before deciding whether to purchase the Loss Damage Waiver, you may wish to determine whether your own Vehicle insurance affords you coverage for damage to the rental Vehicle and the amount of the deductible under your own insurance coverage. The purchase of this Loss Damage Waiver is not mandatory and may be waived. The daily cost of Loss Damage Waiver is displayed on the first page of your Face Page. Loss Damage Waiver will be invalidated, and you will be responsible for damage or loss of the Vehicle that is caused by:

(a) Willful and wanton conduct or misconduct;

(b) Intoxication by alcohol or use of controlled substances as defined in section 42-4-1301, C.R.S.;

(c) Participation in a speed contest;

(d) Carrying persons or property for hire, or pushing or towing anything;

(e) Use of the vehicle while committing a misdemeanor or felony or other criminal act;

(f) Use of the vehicle by an unauthorized driver, which includes any person not specifically authorized by this Agreement;

(g) Supplying information which is false concerning the rental transaction with intent to defraud us;

7

EXHIBIT 2

> (h) Use of the Vehicle outside the continental United States, unless specifically authorized by this Agreement;
> (i) Any instance whereby, during the rental of the Vehicle, the speedometer or odometer is tampered with or disconnected; or
> (j) Use of snow chains on the Vehicle's tires during the rental.

**a. Lost or Damaged Keys or Key Fobs.** Even if you purchase LDW, SDW, or PDW and do not violate the terms detailed in paragraph 6 above, you will be responsible for the following: a) a service fee for replacing the keys or key fob and delivering replacement keys or key fobs or towing the Vehicle to the nearest SIXT location if you lose the keys or key fob to the Vehicle; and b) a service fee for delivering replacement keys or key fob or towing the Vehicle to the nearest SIXT location if you lock the keys or key fob in the Vehicle and request assistance from SIXT, flat tire service, and jumpstarts.

**b. Roadside Assistance Protection.** Roadside assistance is available to all renters. In some cases, we may offer additional Roadside Assistance Protection. If you purchase the optional Roadside Assistance Protection, we will provide you with 24/7 breakdown assistance (where available) without additional charge. Roadside Assistance Protection includes replacement of lost keys or key fobs, flat tire service, jumpstart, and key lockout services. Cost of a replacement tire is not covered by Roadside Assistance Protection. If you do not purchase Roadside Assistance Protection, you may incur additional costs if we provide the services described above. When deciding whether to purchase Roadside Assistance Protection, you may wish to check whether you have other coverage for the services. Roadside Assistance Protection is not insurance and is optional. Roadside Assistance Protection is void if you are in breach of this agreement, including the prohibited uses in Paragraph 6.

**7. Prohibited Uses.** Where permitted by law, the following, in addition to the prohibitions listed above in the Loss Damage Waiver section, unless granted permission by SIXT, shall be considered prohibited uses of the Vehicle ("Prohibited Uses"):

- By anyone without first obtaining SIXT's written consent;
- By anyone who is not a qualified and licensed driver;
- To carry persons or property for hire, livery, On-Demand service, or Transportation Network Company (Uber, Lyft, etc.);
- To propel or tow any vehicle, trailer or other object;
- In any race, test or contest;
- For any illegal purpose or in the commission of a crime;
- To instruct an unlicensed person in operation of vehicle;
- If the vehicle is obtained from SIXT by fraud or misrepresentation;
- To carry persons other than in the passenger compartment of the Vehicle;
- Loading the vehicle beyond its rated capacity;
- While under the influence of alcohol or other intoxicants such as drugs or narcotics or under any other physical or mental impairment which adversely affects the driver's ability to operate the Vehicle;
- Intentionally causing damage to or loss of the Vehicle;
- On other than a paved road or graded private road or driveway;
- In an unsafe, reckless, grossly negligent, or wanton manner. Violating a traffic law or receiving a ticket in an accident is not automatically a violation of this provision, but may be an indication that a violation of this provision has occurred;

8

EXHIBIT 2

- Younger than the minimum age set forth in this agreement; and
- Driving the Vehicle outside of the Geographic area provided in the Rental Information on sixt.com and on your Face Page.

Prohibited use of the Vehicle violates this agreement, voids all liability and other insurance coverage (where permitted by law), makes Vehicle subject to immediate recovery by SIXT, and makes you responsible for all loss of or damage to or connected with the Vehicle, regardless of the cause, including but not limited to SIXT's expenses, including loss of use.

**8. Electric Vehicles.** If your Vehicle is an electric vehicle the following terms shall apply in the addition to the rest of the terms in these Terms and Conditions.

**a. Charge Level at Return.** You hereby agree you will return your Vehicle with a battery charge of at least 80% or to the charge level at which your Vehicle was provided. If your Vehicle is returned with a charge below 80%, or below the charge level at which your electric Vehicle was provided, you hereby agree to pay a $35 charging fee. In addition, if your Vehicle is returned with a charge below 20% you agree to pay an additional $20 fee (in addition to the $35 charging fee).

**b. Range.** The range estimate provided for your vehicle is an estimate only. There are several unpredictable factors that can affect the range of your electric Vehicle. You hereby agree it is your responsibility to ensure the battery in your Vehicle is sufficiently charged to allow you to reach a charging station or to return your Vehicle to Sixt.

**c. Tesla Terms.**
   **i.  Charging.** If your electric vehicle is a Tesla the following additional terms apply. If your rental is via Sixt+ the terms following this sentence in this Section 8.c shall not apply and the terms in the Sixt+ terms and conditions shall apply. Your Tesla Vehicle is permitted to access Tesla Superchargers for charging (subject to Tesla's Terms and Conditions). If you utilize a Supercharger during your rental, Sixt will be directly billed for the costs associated with your charge. Sixt will then invoice you after your rental has completed for these charges. This charge may not appear on your final rental invoice but may come later. You are not obligated to use Tesla Supercharges.

   **ii.  Tesla Key Card/Fob and J1772 adapter.** If the Key card or fob provided to You is damaged or lost, You hereby agree you will be charged to the replacement cost for same and all service costs related thereto. The key card/fob must only be used to charge your Vehicle. Sharing the key card/fob, using unauthorized key cards/fobs, or charging other vehicles is prohibited. You are also responsible for returning the J1772 adapter and hereby agree you will be charged a replacement fee if it is not returned.

**d. Charging Generally.** You hereby agree you are responsible for all fees associated with using any public or private charging stations (including, but not limited to, all idle fees and other related costs). You further agree you are fully responsible for, and will indemnify Sixt for, all damage caused to any charging station equipment or locations during your rental period and any costs related thereto.

**e. Personal Data.** In addition to Section 3 above, you hereby acknowledge your electric Vehicle may have a dash cam which may record incidents during your rental which maybe be used after

9

your rental by Sixt. You further acknowledge that it is your responsibility to delete the data collected by your electric Vehicle during your rental period. If the Vehicle prompts you to do a software update you hereby agee to ignore the request, unless specifically instructed by Sixt to update the software. You further acknowledge violating the preceding sentence is at your own risk and Sixt accepts no responsibility regarding same.

**f. Towing.** If your electric Vehicle is need of a tow for any reason, your hereby agree you must contact Sixt and the tow must be arranged via Sixt.

**9. Insurance.** When Supplemental Liability Insurance or Business Travel Protection is purchased or included as specified on the Face Page, liability coverage from "Sixt" shall be primary up to the minimum financial responsibility ("FR") limits required by the laws of the state where the loss occurs. If additional liability coverage is declined on the Face Page, then the following applies: Sixt as an insured complies with applicable motor vehicle FR laws. Unless required by law, Sixt does not extend any of its liability coverage to any Authorized Drivers, passengers or third parties under the Agreement. You are responsible for all damage or loss you cause to others. You agree to maintain liability insurance during the term of this rental agreement which provides to the owner, to us, and to you, the following primary coverage: (a) bodily injury ("BI") and property damage ("PD") liability coverage; (b) personal injury protection ("PIP"), no-fault, or similar coverage where required; (c) uninsured/underinsured ("UM"/"UIM") coverage where required, and (d) comprehensive and collision damage coverage extending to the Vehicle. If liability insurance or self-insurance is available on any basis to Renter, AAD(s) or any other driver and such insurance or self-insurance satisfies the applicable state FR limits, then Sixt extends none of its liability coverage. However, if the Authorized Driver is in compliance with the Terms and Conditions of the Agreement, and if Sixt is obligated by law to extend its liability coverage to Authorized Driver or third parties, then Sixt's obligation is limited to the applicable state FR limits where the loss occurs. Unless required by law, Sixt does not extend any of its liability coverage to any claim made by a passenger while riding in or on or getting in or out of the Vehicle. Sixt's liability coverage does not extend to liability imposed or assumed by anyone under any worker's compensation act, plan or contract. Where permitted by law, by signing this Agreement, Sixt and you reject UM, UIM, and supplemental no-fault or PIP coverages. Where Sixt is required to provide such coverage, Sixt and you hereby select the minimum limits required by law. Our insurance policy contains exclusions, conditions, and limitations applicable to anyone claiming coverage. You agree to cooperate with our insurer if any claim is made, and give us immediate notice of damage, claim, or lawsuit against you. Our insurance applies only in the United States and Canada.

**10.. Charges and Costs.** You will pay us at or before the conclusion of this rental, or on demand, all charges due us under this Agreement, including the charges and fees shown on the Face Page and: (a) a mileage charge based on our experience if the odometer is tampered with; (b) any taxes, surcharges or other government-imposed fees that apply to the transaction; (c) all expenses we incur locating and recovering the Vehicle if you fail to return it, return it to a location or office other than the location or office identified by us, or if we elect to repossess the Vehicle under the terms of this Agreement; (d) all costs including pre- and post-judgment attorney fees we incur collecting payment from you or otherwise enforcing or defending our rights under this Agreement; (g) a reasonable fee not to exceed $400 to clean the Vehicle if returned substantially less clean than when rented or if there is evidence of smoking or vaping in our Vehicle; (h) towing, impound, storage charges, forfeitures, court costs, penalties and all other costs we incur resulting from your

10

EXHIBIT 2

use of the Vehicle during this rental; and (i) where permitted, airport facility fees and/or concession recovery fees (which may be charged as a percentage of any fee due under this Agreement), vehicle license recovery fees, other fees and surcharges . Special rental rates, vehicle category upgrades or any equipment or services provided to you free of charge only apply to the initially agreed upon rental period: If you return the Vehicle after the Due-In Date, you may be charged the standard rates for each day (or partial day) after the Due-In Date, which may be substantially higher than the rates for the initially agreed rental period. You also may be charged the standard fees for each day (or partial day) after the Due-In date for any equipment or services provided to you without charge for the initially agreed upon rental period. You will not receive a refund of prepaid amounts if you return the Vehicle before the Due-In Date. **All Charges are subject to a final audit. If errors are found, you authorize us to correct the Charges with your payment card issuer.**

You hereby authorize Sixt to charge to the credit card(s) and/or debit card(s) that was provided to Sixt all amounts owed under this agreement for advance deposits, incremental authorizations/deposits, and any other amounts owed, as well as payments refused by a third party to whom billing was directed. You also authorize Sixt to re-initiate any charge to your card(s) that is dishonored for any reason.

If a reservation is for a period in excess of twenty eight (28) consecutive days, such reservation shall be governed by the following and supersede any contradictory terms in this Agreement. Such reservation shall consist of consecutive rentals for individual terms of no more than twenty eight (28) days each ("Rental Period"), but consecutively lasting for a period of time equal to the reservation period ("LT Reservation Period"). Each Rental Period is a separate rental, distinct from any other Rental Period during the LT Reservation Period. Subsequent rental agreements will be sent to You via email. You must review, electronically sign, and provide the Vehicle's current mileage for each subsequent rental agreement. You agree that Sixt will send this email for three consecutive days and if you do not respond, then Sixt will deem the rental agreement as accepted. You acknowledge that on the first day of each rental agreement you will be charged the rental agreement's gross total  and that this will occur for every rental agreement in the LT Reservation Period. Further, if the payment fails, You will be required to provide a different payment method. A Sixt representative will contact You via email for three consecutive days, or until You are reached, or You contact Sixt back. The first two days, You will be informed about the failed authorization. On the third day of no response, You will be informed the vehicle must be returned at a Sixt location within 24 hours and the new rental agreement will be void. If the Vehicle is not returned and no alternative payment method is provided,  the Vehicle will be considered overdue, and the overdue process will commence. Each rental during the LT Reservation Period will be charged the same time and mileage rate as set forth in the reservation for the initial Rental Period, however applicable fees and taxes are subject to change. You acknowledge that at any time You agree to a revised agreement, such revised agreement will govern each remaining Rental Period. In the event you return the Vehicle before the end of the applicable rental agreement, there will be a recalculation of your daily time and milage rate based on your actual length of rent. Based on this daily rate, you will be responsible for a potentially higher daily rate for the shortened length of rent. If there is a difference, it will be refunded to You within three to fifteen business days from your return date.

You agree if you return your vehicle earlier than the Due In time listed at the top of you Face

EXHIBIT 2

Page, without previously informing us of your intention to do so, We reserve the right to recalculate your charges based on the number of days you actually used your Vehicle plus charge You for the unused days at a discounted rate.

You agree if you return your Vehicle two hours or more later than the Due In time listed at the top of your Face Page, without previously informing us of your intentions to do so, you may be charged a late return fee of $20.00, in addition to any applicable changes to the daily Rental Day charges and the amount of days charged, if your late return leads to you being in possession of the vehicle for an additional rental day(s).

If you do not contact us to extend your rental, nothing herein gives you permission to retain possession of your rental vehicle beyond the date and time stated on your Rental Agreement. If you retain possession of the vehicle without contacting us, we will follow our standard overdue process.

After your first Rental Period, Sixt may contact You and require the exchange of Your Vehicle, on no less than three (3) days' notice, due to maintenance needs of the Vehicle, the Vehicle needing to be de-fleeted from Sixt's fleet, or if you have a Vehicle above the car class you reserved. You will be exchanged into a Vehicle in the car class of Your original reservation, despite the car class of Your current Vehicle. If Sixt requires the exchange, You may take the Vehicle to any Sixt location for the exchange without incurring any additional fees.

**11. Deposit.** You permit us to reserve against your credit or debit card at the beginning of the rental an amount up to three times the estimated total charges as a deposit, in no event less than $200, or the amount listed on the Face Page. For Vehicles in the executive or luxury categories you authorize us to reserve up to $5,000 against your credit card. We may use your deposit to pay any amounts owed to us under this Agreement. The deposit amount does not limit in any way the total amount owed to use under this Agreement. We will authorize the release of any excess Reserve upon the completion of your rental. Your debit/credit card issuer's rules will apply to your account being credited for the excess, which may not be immediately available.

**12. Text Messages, Phone Calls, and Emails.** By signing the Face Page you expressly consent for Sixt, or an agent of Sixt, to contact you at the phone number(s) and email address(es) provided in connection with your rental to deliver, or cause to be delivered, informational, transactional or promotional content, including but not limited to: customer surveys, notices, confirmations, reservations, receipts, invoices and billing information, collection communications, advertisements, events and promotions, and other information regarding goods, services, rental programs and products offered by Sixt, including fuel and toll options available for your rental. You confirm that you are the subscriber or customary use of the phone number(s) and/or email address(es) provided in connection with your rental and that you are authorized to receive messages from Sixt for these purposes using that contact information.

You authorize Sixt, or an agent of Sixt, to deliver or cause to be delivered messages, including telephonic sales calls, via: live agent, prerecorded or artificial voice, virtual assistant, voicemail transmission, ringless voicemail, email, or via autodialed or automated calls, texts, or emails using an automatic telephone dialing system or an automated system for the selection and dialing of telephone numbers, and at any time, including outside the hours of 8 a.m. to 8 p.m. in your time

zone. Your consent to receiving such messages is not required, directly or indirectly, to purchase goods or services from Sixt, or to execute of your rental agreement.

**13. Your Property.** You release us, our agents and employees from all claims for loss of or damage to your personal property, including digital data or information from any mobile device that you link to any telematics device or system in the Vehicle, or that of any other person, that we received, handled or stored, or that was left or carried in or on the Vehicle or in any service vehicle or in our offices, whether or not the loss or damage was caused by our negligence or was otherwise our responsibility. **The Vehicle may be equipped with an infotainment system that permits you to pair your own mobile devices, and which may download your personal contacts, communications, location or other digital data. If you pair your device during the rental, you should unpair it and wipe all personal information from the Vehicle's systems before returning it.**

**14. Breach of Agreement.** The acts listed in Paragraph 6 and 7 are prohibited uses of the Vehicle and breaches of this Agreement. You will breach this agreement if you allow any person other than the Renter or an Authorized Driver to operate the Vehicle. If an Unauthorized Driver damages the Vehicle or injures others, we will hold you responsible for the damage. You waive all recourse against us for any criminal reports or prosecutions taken against you by law enforcement arising out of your breach of this Agreement.

**15. Modifications.** No term of this Agreement can be waived or modified except by a writing signed by one of our expressly authorized representatives. SIXT counter representatives are not authorized to waive or change any term of this Agreement. If you wish to extend the rental period, you must return the Vehicle to our rental office for inspection and written amendment from us by the Due-In Date. This Agreement constitutes the entire agreement between you and us. All prior representations and agreements between you and us regarding this rental are void.

**16. Severability.** If any provision of this Agreement is determined to be unlawful, contrary to public policy, void or unenforceable, all remaining provisions shall continue in full force and effect. This provision does not apply in New Jersey.  To the extent that New Jersey law is applicable to this Agreement, this Agreement will be construed in accordance with New Jersey law.

**17. Waiver.**  A waiver by us of any breach of this Agreement is not a waiver of any additional breach or waiver of the performance of your obligations under this Agreement. Our acceptance of payment from you or our failure, refusal or neglect to exercise any of our rights under this Agreement does not constitute a waiver of any other provision of this Agreement. To the extent permitted by law, you release us from any liability for consequential, special or punitive damages in connection with this rental or the reservation of a Vehicle.

The limitation regarding recovery of consequential, special, or punitive damages is not applicable to claims in New Jersey based upon personal injuries that result from the negligent, reckless, or intentional acts of SIXT, do not release us from any implied warranty of fitness applicable under New Jersey law, and do not apply to violations of the New Jersey Consumer Fraud Act.

**18. Arbitration Agreement and Class Action Waiver.** You and SIXT each waive their right to a jury trial or to participate in a class action pursuant to the following terms. You and SIXT  agree

EXHIBIT 2

to arbitrate any and all claims, controversies or disputes of any kind ("claims") against each other, including but not limited to claims arising out of or relating to this agreement, or our products and services, charges, advertisings, or rental vehicles including without limitation claims based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions or any other source of law. The arbitrator, and not any federal, state or local court or agency, shall have authority to resolve any and all disputes relating to the interpretation, applicability, enforceability or formation of this agreement, including but not limited to any claim that all or any part of this agreement is void or voidable. You and SIXT agree that no claims will be asserted in any representative capacity on a class-wide or collective basis, that no arbitration forum will have jurisdiction to decide any claims on a class-wide or collective basis, and that no rules for class-wide or collective arbitration will apply.

The parties agree, however, that either party may bring an individual action in a small claims court with valid jurisdiction provided that the action is not made part of a class action, private attorney general action or other representative or collective action. The parties also agree that claims involving a third party insurance company separately providing coverage to you, personal injury claims, or claims relating to the application of your financial responsibility relating to the use or operation of Vehicle, may be brought in a court with valid jurisdiction.

**19. Dispute Resolution Procedure.** Before asserting a claim in any proceeding, you and Sixt agree that either party shall give the other party written notice of the claim to be asserted thirty (30) days before initiating a proceeding and make a reasonable good faith effort to resolve the claim. If you are intending to assert a claim against Sixt, you must send the written notice of the claim to Attention: Corporate Creations Network Inc., 801 US Highway 1, North Palm Beach, FL 33408. If Sixt is intending to assert a claim against you, we will send the written notice of the claim to you at your address appearing in our records. No demand for arbitration may be made after the date when the institution of legal or equitable proceedings based on such claim or dispute would be barred by the applicable statute of limitation.

NO SETTLEMENT DEMAND OR SETTLEMENT OFFER USED PRIOR TO ANY LEGAL PROCEEDING MAY BE USED IN ANY PROCEEDING INCLUDING AS EVIDENCE OR AS AN ADMISSION OF ANY LIABILITY OR DAMAGES (OR LACK THEREOF) AND SHALL REMAIN CONFIDENTIAL BETWEEN YOU AND SIXT.

If you and SIXT do not resolve the claim within thirty (30) days after the above described notice is received, either party may commence an arbitration by filing a demand for arbitration with the American Arbitration Association ("AAA") pursuant to its Consumer Arbitration Rules. Claims will be resolved pursuant to the AAA's Commercial Consumer Arbitration Rules in effect at the time of the demand, as modified by this Agreement, however, a single arbitrator will be selected according to AAA's Consumer Arbitration Rules. The AAA rules can be found at www.adr.org.

This arbitration agreement is subject to the Federal Arbitration Act. The arbitrator has no authority to join or consolidate claims, or adjudicate joined and consolidated claims. The parties agree that the arbitrator's decision and award will be final and binding and may be confirmed or challenged in any court with jurisdiction as permitted under the Federal Arbitration Act.

If you are an individual, in the event that (1) your claim is less than $10,000, and (2) you are able to

14

EXHIBIT 2

demonstrate that the costs of arbitration will be prohibitive as compared to costs of litigation, SIXT will pay as much of your filing and hearing fees in connection with the arbitration as the arbitrator deems necessary to prevent the arbitration from being cost-prohibitive as compared to the cost of litigation. You are responsible for all other costs/fees that you incur in arbitration (e.g. fees for attorneys, expert witnesses, etc.).

If any portion of this "Dispute Resolution Procedure" section or the "Arbitration Agreement and Class Action Waiver" section are deemed to be invalid or unenforceable or is found not to apply to a claim, the remainder of this "Dispute Resolution Procedure" section and the "Arbitration Agreement and Class Action Waiver" section remain in full force and effect. However, if the "Arbitration Agreement and Class Action Waiver" section is deemed unenforceable, any class action claim(s) must proceed in a court of competent jurisdiction.

**20. Personal Information.** The information that you provide to us is stored and used to the fullest extent permitted by law and in accordance with Sixt's privacy which is available at www.sixt.com/privacy and is incorporated herein by reference. You agree that we may, and authorize us to, provide personal information in our possession about you and other Authorized Drivers (including driver's name, address, cellular/mobile and other phone numbers, driver's license and/or credit/debit card information) to applicable authorities or other third parties in connection with our enforcement of our rights under this Agreement and for other legitimate business purposes, including disclosure to our affiliates or other third parties that conduct services on our behalf.  You also consent to us or our representatives contacting you. Questions regarding privacy should be directed to: Personal Data, Sixt Rent a Car, LLC, PO Box 8188, Fort Lauderdale, Florida 33310-0967.

15

EXHIBIT 2

EXHIBIT 2



EXHIBIT 2



**sixt.com**
**reservations@sixt.com**

**sixt.com/invoicecopy**
**sixt.com/partners**

IOS              Google Play

    



Download the SIXT App now!



**National Reservation - Customer Service:**
+1 (888) SIXTCAR (749-8227)
**Roadside Assistance:**
+1 (888) 749-8543



**Drying Little Tears**
The Regine SIXT Children's Aid Foundation –
the corporate social responsibility project
of SIXT in over 115 countries.

**drying-little-tears.com**

  


**@sixtusa | #sixtrentacar**

Your feedback is important to us, please review us:
**sixt.com/review-us**

**SIXT USA Headquarters**
**SIXT rent a car, LLC**
P.O. Box 8188
Fort Lauderdale, FL 33310

18

    

HQ_CO_T&_2-26

# STRATFORD POLICE DEPARTMENT

212 North Poplar St.
Stratford, TX 79084

(806) 366-3051

Case #: **24-00057**

Report Type: **Incident Report**
Status: **Open**
Reason:
Report Date: **7/4/2024**
Title: **STOLEN VEHICLE**

EXHIBIT 3    **1**

Page 1 of 2

---

CASE #: **24-00057**
Incident Date/Time: **7/4/2024 11:07:49 PM**
Location: **212 North Poplar St.**
**Stratford, TX 79084**

Suspect Name          DOB          DL/ID#

☐ Cargo Theft

INVESTIGATING OFFICER
**Greaves , Walter    ID-NR: 403**

SIGNATURE: _____

REGION/DISTRICT/SGT. AREA:    **Texas**

APPROVING SUPERVISOR:
ID-NR:

SIGNATURE: _____

DATE FILED
July 4, 2026 7:16 PM
FILING ID: 955260B6692BB
CASE NUMBER: 2026CV30112

## WITNESS

Name:          **GARCIA, LUCINDA LEROUX**
Address:       -- --
County:        -- --
City, State, Zip:    -- --, -- -- -- --

| | | | |
|---|---|---|---|
| DOB: | **05/20/1985** | DL Number: | **003410266 CO** |
| Race/Gender: | **White / Female** | ID Card Number: | -- -- |
| Ethnicity: | **Not Hispanic** | SSN: | -- -- |
| Height/Weight: | **5' 04" / 130 lbs.** | Home Phone: | -- -- |
| Build: | **Small** | Cell Phone: | -- -- |
| Hair/Eyes: | **Brown / Brown** | Occupation: | -- -- |
| Complexion: | **Light** | Employer: | -- -- |
| | | Work Phone: | -- -- |

Alias:        -- --
Marks:        -- --
Tattoos:      -- --
Disabilities: -- --

## VEHICLE INFORMATION:
### VEHICLE

| | | | |
|---|---|---|---|
| Vehicle Status: | -- -- | Year: | **2022** |
| License Plate State: | **CA** | Make: | **Toyota** |
| License Plate: | **8XZM050** | Model: | **Sequoia** |
| Registration Exp. Date: | **12/2024** | Towed By: | -- -- |
| | | Towed To: | -- -- |
| Owner: | -- -- | Released To: | -- -- |
| Vehicle Type: | **Passenger Vehicle** | Impounded: | **No** |
| VIN: | **5TDFY5A16NS076804** | | |

## EVIDENCE INFORMATION:
### VIDEO EVIDENCE

Evidence Collected:    ☒ Yes    ☐ No
Evidence Type:    **Both Body and Car Camera**

1

# STRATFORD POLICE DEPARTMENT

212 North Poplar St.
Stratford, TX 79084

(806) 366-3051

Case #:  **24-00057**

Report Type:  **Incident Report**
Status:  **Open**
Report Date:  **7/4/2024**
Title:  **STOLEN VEHICLE**

EXHIBIT 3    **2**

Page 2 of 2

## NARRATIVE:

Thursday, July 4, 2024, at approximately 2307 hours, I, Walter Greaves #403, with the Stratford Police Department, was travelling southbound on U.S. Hwy. 287. As I was passing Pilot, my AXON ALPR camera (Automatic License Plate Recognition) had given notification of a Stolen License plate. I turned around and trailed the vehicle that later returned to a gray 2022 Toyota Sequioa, bearing CA tag 8XZM050.

I provided dispatch with the tag and informed Stratford Police Department Chief Coborn #401 and Sherman County Deputy Alfonso #803 that I was trailing a possible stolen vehicle, heading North on U.S. Hwy. 287.

Dispatch provided me a return of the vehicle and confirmed it to be stolen out of Denver, CO. I activated my emergency red and blue lights and conducted a felony stop on the vehicle. As the vehicle pulled over to the shoulder, I exited my patrol unit and drew my issued duty serviced weapon.

I provided loud verbal commands to the driver of the vehicle who was later identified as Garcia, Lucinda. I commanded Garcia to exit her vehicle and to walk backwards to me. Garcia complied with my commands. I requested Garcia to get down on the ground and she did so. I asked Garcia if there was anyone else inside of the vehicle and she stated yes.

Coborn arrived on scene. I covered Coborn as he detained Garcia. We cleared the rest of the occupants of the vehicle to ensure our safety. Upon investigation, we were informed that they had previously rented the vehicle from a rental company by the name of Sixt Rental.

Garcia was then placed in the front seat of my patrol unit as I contacted Denver PD and informed them of the stolen license plate hit. I spoke with Denver Police Department Records Technician Owada, Divine. Owada who provided me with a copy of Denver Police Departments report. I informed Owada, our dispatcher will be sending a confirmation hit on the vehicle. I also informed Owada that both license plates are on the vehicle.

After reviewing Denver Police Departments report, I observed the rental company that made the initial report, didn't contact Denver Police Department to inform them that their vehicle was returned. The vehicle was originally reported stolen on 04/17/2024. Sometime between the reported stolen date and the date of the stop, the vehicle was returned to Sixt Rental. Due to Sixt Rental not properly following up with Denver Police Department, the vehicle was never removed from NCIC as a Stolen Vehicle.

Once the investigation was concluded, I informed Garcia I would make a report for her. I provided Garcia with the necessary information to follow up on the report. Garcia was then released without further incident.

No further actions were taken.

2